UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN PARKS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C18-5006 MJP

**ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff, Steven Parks, seeks review of the Commissioner's decision that he was entitled to Disability Insurance Benefits only for a closed period. Plaintiff contends the ALJ erred by determining that his disability ended in May 2014. Dkt. 15. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 49 years old, has a high school education, and has worked as a hazardous materials driver and a construction laborer. Tr. 18, 86. In 2012 plaintiff suffered injuries, most severely to his left shoulder, in a motor vehicle accident and filed a related workers compensation claim. Tr. 18, 355. He had left shoulder surgery in February and December 2013. Tr. 976. Plaintiff applied for disability benefits in April 2014, alleging disability as of September

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

12, 2012. Tr. 77. Plaintiff's application was denied initially and on reconsideration. Tr. 77. After the ALJ conducted a hearing on July 25, 2016, the ALJ issued a decision finding plaintiff disabled beginning September 12, 2012. Tr. 77-87. The ALJ found, however, that plaintiff experienced sufficient medical improvement that his disability ended May 23, 2014. Tr. 87-95.

## THE ALJ'S DECISION

The ALJ first used the five-step disability evaluation process in 20 C.F.R. § 404.1520(a)(4) to determine that plaintiff was disabled beginning September 12, 2012. Tr. 80-87. The ALJ determined that plaintiff was able to perform sedentary work with additional limitations, and was likely to miss more than two days of work each month due to pain. Tr. 83.

The ALJ then utilized the eight-step procedure set forth in 20 C.F.R. § 404.1594(f) to determine whether plaintiff's disability continued or ended. Tr. 79. The ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since September 12, 2012, the onset date of disability.

**Step two:** Plaintiff has the following impairments: carpal tunnel syndrome on the right with recent surgical release; mild cervical degenerative disc disease; depression; post-traumatic stress disorder (PTSD)/anxiety; history of labral tear, degenerative joint disease and tendonitis affecting the left upper shoulder (with residual Grade 4 chondral injury); and obesity. These impairments do not meet or equal the severity of a listed impairment under 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Step three**: Medical improvement occurred as of May 23, 2014.

**Step four**: The medical improvement that occurred is related to the ability to work because there has been an increase in plaintiff's residual functional capacity.

**Residual Functional Capacity (RFC):** Plaintiff can perform light work, limited to occasional overhead reaching with his left upper extremity, frequent reaching otherwise, and frequent handling or fingering with his right hand. He is further limited to only occasional crawling, no climbing of ropes, ladders or scaffolds, and frequent balancing or climbing ramps or stairs. He must avoid concentrated exposure to temperature extremes, vibration, unprotected heights, moving machinery or similar hazards. He is limited to simple, repetitive, routine tasks and only occasional interaction with coworkers and the general public.

**Step five**: Because there was medical improvement related to the ability to work, the ALJ did not need to determine whether certain exceptions applied.

**Step six**: Plaintiff's impairments in combination are severe.

**Step seven:** Plaintiff cannot perform past relevant work.

**Step eight:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is no longer disabled. His disability ended May 23, 2014.

Tr. 80-96. The Appeals Council denied plaintiff's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1. The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

## DISCUSSION

"An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

**A.     Lay Witness Testimony**

Plaintiff alleges the ALJ erred by discounting the July 2016 statements of his fiancée and her mother. Dkt. 15 at 1. Plaintiff's fiancée, Rachel McCully, who lives with him, reported that in contrast to his "kind, patient," and sociable personality and "happy" demeanor before the 2012 accident, plaintiff "progressively became more withdrawn" and was angry and irritable most of the time due to pain. Tr. 301-307. Rachel's mother, Sarah McCully, reported that while before the 2012 accident plaintiff was "a happy, healthy man," he is now "grouchy and short tempered" due to pain. Tr. 313. Because she was "a care giver for fifteen years, [she is] able to read the physical signs of pain" and has observed on many occasions plaintiff "holding his arm to his

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 3

body to protect it, bad headaches due to the neck pain and his facial expressions which show pain." Tr. 313. She now helps "three to five days a week … with indoor work such as vacuuming, dishes, making and changing beds, etc." and Rachel's father helps with all outdoor work. Tr. 313.

An ALJ may only discount a lay witness' testimony by giving germane reasons. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). The Commissioner concedes that two reasons the ALJ gave, that the statements were not based on medical testing and were potentially influenced by loyalty to plaintiff, were in error. Dkt. 16 at 13; *Diedrich*, 874 F.3d at 640 ("close relationship with [plaintiff] is not a germane reason to discount" lay witness observations); 20 C.F.R. §§ 404.1513(a)(4) and 404.1520(a)(3) (ALJ "will consider all evidence"; this includes "[e]vidence from nonmedical sources").

The ALJ also discounted both lay witnesses' testimony on the grounds that they were "not consistent" with medical and other evidence indicating that plaintiff's "degenerative disc and joint diseases improved beginning May 23, 2014." Tr. 94. Lay witness testimony may not be rejected on the grounds that it lacks support from medical evidence, but it may be rejected if contradicted by medical and other evidence. *Diedrich*, 874 F.3d at 640; *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ cited records showing improvement in plaintiff's left shoulder function, but also ongoing pain and numbness in his arms, left shoulder, neck, back, hips and legs with deficits in strength, range of motion, and sensation. Tr. 1060, 1191-92. The evidence does not contradict the lay witnesses' statements.

The Commissioner argues that even if the ALJ erroneously discounted the lay witness testimony, any error was harmless because the ALJ relied on medical opinions. Dkt. 16 at 14. This is simply a reformulation of the ALJ's reasoning. If the medical evidence contradicted the

lay witnesses' statements, the ALJ could reject them. But since the medical evidence merely lacked support for the lay witnesses' statements, that is not a germane reason to discount them. "The fact that lay testimony … may offer a different perspective than medical records alone is precisely why such evidence is valuable" in a disability determination. *Diedrich*, 874 F.3d at 640.

The Commissioner next argues that the lay witnesses' statements were similar to plaintiff's and thus the ALJ's reasons for rejecting plaintiff's statements apply. Dkt. 16 at 14. As discussed below, the ALJ's reasons for rejecting plaintiff's testimony were not valid. Thus, the Commissioner's argument fails.

The Court concludes the ALJ erred in discounting the statements of Rachel and Sarah McCully.

**B.     Plaintiff's Testimony**

In a May 2014 function report, plaintiff stated he was unable to push, pull, or grasp or lift with control with his left hand. Tr. 231. He was lifting only seven pounds in physical therapy. Tr. 236. He was unable to sit or stand for long and could walk about a block before needing to stop and rest. Tr. 231, 236. "Being in pain and no sleep [made him] crabby and angry also." Tr. 236. At the July 2016 hearing, plaintiff testified that he cannot work due to pain and his "bad attitude." Tr. 21.

Where, as here, an ALJ finds that a claimant has established underlying impairments that may reasonably be expected to cause the alleged symptoms and there is no affirmative evidence of malingering, the ALJ may reject plaintiff's testimony about the severity of his symptoms only "by offering specific, clear and convincing reasons" supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). An ALJ must "explain which of an individual's

symptoms [were] found consistent or inconsistent with the evidence in [plaintiff's] record…."
SSR 16-3p, 2017 WL 5180304 at *8 (Oct. 25, 2017).

The ALJ discounted plaintiff's symptom testimony as inconsistent with his daily activities and the medical record, and because he used only conservative measures to treat his pain. Tr. 91. The Commissioner argues that the ALJ also discounted plaintiff's testimony because his condition improved by May 23, 2014. Dkt. 16 at 10. However, that is not a reason, but a conclusion.

   **1. Daily Activities**

Inconsistency with daily activities can be a valid reason to discount a claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ listed plaintiff's reported daily activities as "preparing meals, [driving to and] attending physical therapy, shopping, laundry, cleaning, gardening, caring for his children, watching movies, and reading." Tr. 91. None of these are inconsistent with plaintiff's allegations. He reported he can prepare only simple meals such as sandwiches. Tr. 233. He shops only with the assistance of his fiancée. Tr. 234. He helps with laundry when he can but his kids and fiancée "are a great help." Tr. 24. Gardening consisted of "watch[ing] the kids [to] make sure they [weren't] pulling up what they're not supposed to be pulling up" and there are benches so he could sit when he needed to. Tr. 26, 31. While he reported caring for his young daughter, the only task he mentioned was "spend[ing] time with" her and he had older children to help. Tr. 232. He specifically reported that he can no longer carry a baby, as he could before his injury. *Id*. None of the reported activities contradict plaintiff's testimony that his left arm is quite limited and that he cannot sit, walk, or stand for long. The Commissioner argues that plaintiff's ability to drive "necessarily required a significant amount of sitting, arising from a seated position, and the use

of hand and foot controls, not to mention sustained concentration and multi-step decision-making—all of which [plaintiff] alleged difficulty doing." Dkt. 16 at 11.  Driving does not necessarily require sitting for long periods, unless one drives a great distance with no breaks, and plaintiff did not allege inability to rise, use his right hand and foot, concentrate, or make "multi-step decision[s]."

The ALJ also cited a treatment note, from a February 2016 appointment to address moderate to severe right arm pain and numbness, stating that plaintiff has been doing "m[or]e physical activity past year since he moved onto a 'mini farm' with his family, lot of walking, lifting, etc." Tr. 1060.  The Commissioner argues that this note directly contradicts plaintiff's allegation that he cannot walk more than a block before resting or lift more than seven pounds with his left arm.  Dkt. 16 at 10.  But nothing in the record suggests that plaintiff walks more than a block at a time (or even that the mini farm is longer than a block in total), or that plaintiff put more than seven pounds of weight on his left arm.  Plaintiff need not be "utterly incapacitated" to be disabled, and plaintiff has not alleged total incapacity and immobility as the Commissioner seems to suggest.  *See Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits").  The Commissioner contends plaintiff's hearing testimony is unreliable because he "denied working on this mini-farm" but the February 2016 treatment note only says that he "moved onto a 'mini farm,'" not that he did farm work.  Dkt. 16 at 10-11; Tr. 1060.  There is no contradiction.

The Court concludes that inconsistency with his daily activities was not a valid reason to discount plaintiff's testimony.

**2. Medical Record**

"Contradiction with the medical record" can be a valid reason to reject a claimant's testimony on symptom severity. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ focused on improvements in plaintiff's left shoulder, which was the primary injury in the 2012 motor vehicle accident and the primary focus of the related workers compensation claim. For example, a record dated May 22, 2014, states that plaintiff "reports pain in left shoulder is minimal, reporting residual stiffness in shoulder." Tr. 976. But plaintiff has pain in several other areas of his body. For example, a July 2014 examination showed pain and decreased range of motion in the neck and the left shoulder, elbow, wrist and hand. Tr. 1191-92. In July 2015 plaintiff had worsening left shoulder pain, cramping right arm pain and right hand numbness. Tr. 1067. In February 2016 plaintiff had persistent, worsening pain in his upper back and neck. Tr. 1060. A June 2016 treatment note states plaintiff had "symptoms consistent with [right hand] carpal tunnel syndrome going back several years." Tr. 1198. The medical evidence does not contradict plaintiff's testimony regarding the severity of his symptoms. The Court concludes that inconsistency with the medical record was not a valid reason to discount plaintiff's testimony.

**3. Conservative Pain Treatment**

An "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" can be a valid reason to discount a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

When the ALJ asked plaintiff what medication he was taking for pain, plaintiff testified that he used cannabis and "[o]ccasionally Advil.… I've had issues with it, though, … some liver issues." Tr. 21-22. The ALJ asked nothing further about pain medication.

The Commissioner cites two Ninth Circuit cases for the proposition that conservative

pain treatment is a sufficient reason to reject a claimant's pain testimony.  Dkt. 16 at 12.  Neither case is on point.  In *Parra*, the Ninth Circuit held that objective medical testing showing normal knee function, together with using only over-the-counter pain medication, was sufficient to discount claimant's testimony of severe knee pain.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Here, there are a plethora of abnormal clinical findings.  In *Rollins*, the Ninth Circuit concluded that a doctor's recommendation of a "conservative course of treatment" contradicted his opinion of severe impairments and was thus a valid reason to discount the doctor's opinions.  *Rollins*, 261 F.3d at 856.  Notably, conservative treatment was not given as a reason to discount the *claimant's* testimony in that case.  *Id.*

Even if cannabis and Advil are considered to be "conservative treatment" for pain, the ALJ did not consider whether this constituted an unexplained failure to seek more aggressive treatment.  The ALJ did not ask plaintiff any clarifying questions at the hearing.  Plaintiff's fiancée reported that although plaintiff "is often in pain and has difficulty sleeping … he does not wish to be on pain pills, as he can hardly stay awake or focused while he is on them.  [He says] that they don't fix anything, so he doesn't want to take something he will just have to keep taking more and more of for the rest of his life, and that it would make him no better than a 'junkie.'"  Tr. 306.  The ALJ's decision failed to address whether the lack of more aggressive pain treatment was adequately explained by the desire to avoid side effects and the fear of a lifelong addiction to increasing amounts of narcotic pain medication.  The Court concludes that conservative treatment was not a valid reason to discount plaintiff's pain testimony.

The Court concludes the ALJ erred in discounting plaintiff's testimony regarding the severity of his symptoms.

### C. Residual Functional Capacity after May 23, 2014

Plaintiff argues the ALJ erred by determining the end date of his disability without calling a medical expert. Dkt. 15 at 2. The Commissioner argues that substantial evidence supports the determination of May 23, 2014, as the disability termination date because the ALJ relied on several medical opinions and a physical therapist's report. Dkt. 16 at 2-3. These sources, however, were engaged to evaluate plaintiff's work-related left shoulder injury and gave little attention to other areas. On May 20, 2014, Christopher C. Rankin, M.D., in an appointment "for followup of [plaintiff's] left shoulder" stated that plaintiff reported "that the shoulder is doing fairly well [and] both range of motion and strength in the shoulder have improved." Tr. 974. Physical findings were limited exclusively to the left shoulder. Tr. 975. On May 22, 2014, Dr. Bruce R. Christen, M.D., in an appointment to "recheck left shoulder," stated that plaintiff "reports pain in left shoulder is minimal, reporting residual stiffness in shoulder." Tr. 976. Physical findings were limited to the left shoulder, vital signs, and an extremely basic mental health screening. Tr. 977 ("no acute distress"; "Normal mood, affect [and] thought processes."). In a physical capacity evaluation dated July 28, 2014, Lynda White, P.T., cited only one diagnosis: left shoulder status post surgical repair. Tr. 997. In "other findings," Ms. Whyte stated "the client reports he is unable to kneel on his right knee [and] he currently has low back pain…." Tr. 998. Yet the report explicitly states that kneeling and crawling were "not tested." Tr. 997. Finally, in an impairment rating dated July 17, 2014, Timothy V. Sandell, M.D., reported plaintiff had impairments in the left shoulder, left wrist, and cervical spine that were "100% related to the work injury…." Tr. 1192. Dr. Sandell noted that squatting, crouching, bending and stooping limitations in an unidentified physical capacity evaluation were "likely related to a previous orthopedic condition and not directly related to this work injury" but did not

address the matter further. Tr. 1193. Each of these reports showed plaintiff had significant improvement in the left shoulder work-related injury.

These reports do not, however, provide substantial evidence that the rest of plaintiff's impairments had resolved. The ALJ determined that as of May 23, 2014, plaintiff had the severe impairments of right carpal tunnel syndrome with recent surgical release, cervical degenerative disease, depression, PTSD/anxiety, and obesity, in addition to the left shoulder labral tear, degenerative joint disease and tendonitis (with residual Grade 4 chondral injury). Tr. 80, 87. The right carpal tunnel syndrome was treated with surgery in June 2016, shortly before the hearing. Tr. 1229. There is little information in the record as to plaintiff's wrist impairment or prognosis after surgery, other than a treatment note regarding a possible infection. Tr. 1230. In a July 2014 mental health evaluation, Kathleen S. Mayers, Ph.D., diagnosed plaintiff with major depressive disorder. Tr. 1036. She opined that his "pain is likely to interfere with his ability to maintain attention and concentration through a normal eight-hour workday." Tr. 1036.

Medical reports that addressed only a subset of plaintiff's impairments did not provide substantial evidence supporting the ALJ's finding that plaintiff's disability ended May 23, 2014. The Commissioner argues that the ALJ relied on the November 2014 opinion of nonexamining physician Elizabeth St. Louis, M.D. Dkt. 16 at 5. However, the ALJ, despite giving Dr. St. Louis' opinions "great weight," failed to incorporate all of her opined limitations into the RFC. Tr. 93. Dr. St. Louis opined that plaintiff should avoid repetitive push/pull activities with his left upper extremity. Tr. 66. Yet the only left upper extremity limitations in the RFC were "frequent reaching" and "occasional overhead reaching." Tr. 90. Dr. St. Louis also limited plaintiff to lifting 10 pounds maximum with his left arm. Tr. 66. The RFC only limits plaintiff to "light" work, which involves lifting a maximum of 20 pounds. 20 C.F.R. § 404.1567(b).

Plaintiff contends the ALJ also erred by failing to incorporate into the RFC any limitation based on Dr. Mayers' opinion that his "pain is likely to interfere with his ability to maintain attention and concentration through a normal eight-hour workday." Tr. 1036. The ALJ gave Dr. Mayers' opinions "great weight" because they were supported by medical and other evidence. Tr. 94. The Commissioner argues that the opinion of nonexamining doctor Bruce Eather, Ph.D., to which the ALJ also gave "great weight," interprets Dr. Mayers' opinion and provides greater specificity. Tr. 94; *see* Dkt. 16 at 7-8. Dr. Eather opined that while plaintiff's concentration, persistence and pace are "diminished at times by depression, anxiety, and pain focus" he still "retains the ability to maintain attention/ concentration sufficient to complete routine tasks over a normal 8-hour workday with customary breaks." Tr. 69.

Dr. Mayers' opinion imposes a limitation, but does not explain how severe the limitation is. At the hearing, a vocational expert testified that an employee who was off task for more than ten percent of a normal eight-hour workday could not maintain competitive employment. Tr. 37. The ALJ reasonably concluded that Dr. Mayers' opined limitation was consistent with the ten percent threshold. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court concludes the ALJ erred by failing to incorporate into the RFC portions of Dr. St. Louis' opinions that were assigned "great weight." The error is harmful because "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the [vocational] expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

The Court notes that the ALJ determined that a single job with 7,100 positions in the national economy constituted "significant numbers," and that vocational expert testimony established that this was the only job that the claimant could perform with the RFC in the ALJ's decision. Tr. 95, 35-36. The Ninth Circuit has described 25,000 national jobs as "sufficient" but "a close call." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014); *see also Lemauga v. Berryhill*, 686 F. Appx. 420, 422 (9th Cir. 2017) ("The government does not argue before us that the 12,600 available dowel inspector jobs in the national economy represent a significant number. We note that this court has never found a similar number to be significant."). Because the case must be remanded for further proceedings, the Court need not address whether 7,100 jobs nationwide is sufficient.

**D.     Scope of Remand**

Plaintiff requests the Court remand the case for further proceedings. Dkt. 15 at12. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020.

Here, the Court finds that the record, as it stands, does not compel a finding of disability. Even if Dr. St. Louis' limitations were fully incorporated into the RFC, no vocational testimony in the record establishes whether or not there would be jobs in significant numbers in the national

economy that plaintiff can perform.  Also, the lay witnesses' testimony, even if fully credited, describes plaintiff's pain but is less clear about the resulting functional limitations.  Moreover, aside from the left shoulder, evidence regarding the condition of plaintiff's remaining impairments is notably lacking.  In particular, there is virtually no evidence in the record regarding plaintiff's right wrist after the carpal tunnel release surgery that occurred shortly before the hearing.  Enhancement of the record would be useful and, accordingly, remand for further proceedings is appropriate.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate plaintiff's, Rachel McCully's, and Sarah McCully's statements and the medical evidence; reassess the RFC, including incorporating Dr. St. Louis' limitations; and proceed to step eight as needed.

DATED this 7th day of August, 2018.

MARSHA J. PECHMAN
United States District Judge